**UNITED STATES of America,
Plaintiff,**

v.

**Tokie Lea MORIEL, Defendant.**

**No. Crim.01–119.**

United States District Court, S.D. Iowa, Central Division.

April 12, 2002.

Andrew H. Kahl, Asst. U.S. Attorney, Des Moines, IA, Cathy J. Bramel, U.S. Dept. of Justice Tax Division, Washington, DC, for Plaintiff.

Robert A. Nading, II, Ankeny, IA, William Sidney Smith, Smith Schneider Stiles Hudson Serangeli Mallaney & Shindler PC, Des Moines, IA, B. John Burns, III, Iowa Federal Public Defender, Des Moines, IA, Chip J. Lowe, Howe Cunningham & Lowe PLC, Urbandale, IA, Terry F. Wright, Des Moines, IA, for Defendant.

## ORDER

LONGSTAFF, Chief Judge.

Before the Court are three motions by defendant, Tokie Lea Moriel. The government resists all three motions. The Court held a hearing on April 5, 2002 to address these matters.

## I. SUPERSEDING INDICTMENT

The government filed a superseding indictment on March 14, 2002 against defendant. Count I alleges she made a false statement in bankruptcy in violation of 18 U.S.C. section 152(3). Count II alleges she filed a false income tax return, in violation of 26 U.S.C. section 7207. Count III alleges she made false declarations while under oath in violation of 18 U.S.C. section 1623.

## II. MOTION TO DISMISS

On March 19, 2002 defendant filed a motion to dismiss the perjury charge, as alleged in Count III of the superseding indictment. The government filed its resistance to this motion on March 25, 2002.

The superseding indictment alleges that on May 24, 2000 defendant testified, under oath and before a grand jury, that she had owned a bar called "Fantasias" during 1997 and 1998. The indictment alleges that previously, on January 15, 1999, Moriel filed a petition for bankruptcy. In that filing, defendant did not mention her ownership of the bar. The bankruptcy petition included two declarations under penalty of perjury, both signed by defendant, by which defendant indicated that the entire petition was true and correct. Defendant argues that the bankruptcy filing was not made "under oath" and therefore is not sufficient to sustain a conviction under 18 U.S.C. section 1623(c).

The two subsections of the statute relevant to this case work together. Subsection (c) simply provides a method of proving the substantive violation stated in subsection (a). *See United States v. Savoy*, 38 F.Supp.2d 406, 411 (D.Md.1998). The statute states in relevant part:

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined un-

der this title or imprisoned not more than five years, or both.

.    .    .    .    .

(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

18 U.S.C. § 1623. Succinctly stated, "[p]aragraph (a) requires proof of intent and of falsity, whereas paragraph (c) requires proof that the statements are so inconsistent that one is necessarily false without the government having to prove *which* statement is false." *United States v. Porter,* 994 F.2d 470, 473 n. 5 (8th Cir.1993) (discussing section 1623). In prosecutions under 1623(c), the government does not need to present extrinsic evidence to demonstrate which of the two statements at issue are false. *Id.* (citing *United States v. Flowers,* 813 F.2d 1320,

1324 (4th Cir.1987) and *United States v. Muniz,* 690 F.Supp. 482, 487 n. 3 (E.D.Va. 1988)).

Defendant asserts *United States v. Jaramillo,* 69 F.3d 388 (9th Cir.1995) supports its contention that she cannot be prosecuted pursuant to section 1623(c). Jaramillo was a confidential informant in a drug trafficking investigation. *Id.* at 389. Jaramillo provided a written statement, outside of court and signed under penalty of perjury, that was presented to a grand jury regarding his involvement. *Id.* However, when he was called to testify under oath at the trial, Jaramillo changed his story and claimed his written statement to the grand jury was a lie. *Id.* Jaramillo was then indicted under 18 U.S.C. section 1623 for making false declarations before a grand jury or a court. *Id.* at 390. He was convicted at trial, but then on appeal, the Ninth Circuit Court of Appeals panel interpreted section 1623 differently. It found that section 1623(c) was more than just a method of proving a violation of section 1623(a). It determined that both statements at issue under section 1623(c) must have been made under oath. *Id.* at 391. The panel asserted that if Congress intended for declarations other than those under oath to be covered under section 1623(c), then they would have explicitly stated it. *Id.* at 392. The court went on to hold that the written statement Jaramillo made to the grand jury was not under oath, and that the contradiction at issue was merely between one statement given under oath and another that was not, and thus his conviction under 18 U.S.C. section 1623(c) would be reversed. *Id.* As the *Jaramillo* court found both statements needed to be under oath and that one was not in the case before them, it did not reach the question whether the statement that was not under oath was made in an ancillary proceeding to a court. *Id.*

This Court respectfully disagrees with the *Jaramillo* court's conclusion that section 1623(c) requires both statements at issue to have been made under oath. The *Jaramillo* court's finding that section 1623(c) was not a method of proving a violation of section 1623(a) is inconsistent with the statute itself and the law as interpreted by other courts. *See, e.g., Savoy,* 38 F.Supp.2d at 411. Additionally, while not exclusively addressing the requirements of section (c), the leading United States Supreme Court case indicates that in determining whether a statement qualifies under section 1623 the focus is on the degree of formality and association with proceedings before a court. In *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), the defendant, Dunn, was a prison inmate who testified, under oath before a grand jury, regarding the illegal drug activity of another inmate. *Id.* at 102–103, 99 S.Ct. 2190. Later, Dunn went to the other inmate's attorney and recanted his earlier grand jury testimony. *Id.* at 103. He then signed an affidavit prepared by the other inmate's attorney indicating that his grand jury testimony was false, and the other inmate's attorney eventually presented this affidavit to the court. *Id.* Dunn was later prosecuted for perjury under section 1623. *Id.* The Supreme Court did a thorough review of the statute and its legislative history, and stated that section 1623 was enacted in response to evidentiary problems associated with 18 U.S.C. section 1621, which formerly was the only perjury statute. *Id.* at 108, 99 S.Ct. 2190. The Supreme Court concluded that section 1623 was designed to exclude from the term "ancillary proceedings" any statements "given in less formal contexts than depositions." *Id.* at 109, 99 S.Ct. 2190. The Court concluded that Dunn's statement to the other inmate's attorney " 'lacked the degree of formality required by § 1623,' " and held

that the interview with that attorney did not constitute an ancillary proceeding. *Id.* at 111–112, 99 S.Ct. 2190 (quotation omitted). The Court did not focus on whether an oath was administered before the statement was made.

In a case similar to *Dunn,* the Sixth Circuit Court of Appeals addressed a situation where an informant gave testimony before a grand jury, but then later went to see the attorney for the target of the investigation and recanted his prior testimony. *United States v. Tibbs,* 600 F.2d 19, 20–21 (6th Cir.1979). The attorney then had the informant sign an affidavit clearly indicating that his grand jury testimony was false. *Id.* at 21. The informant was later prosecuted for perjury under section 1623. The Sixth Circuit panel determined that the statement to the attorney was not a statement for which the informant could be found guilty of perjury, as he did not authorize that the statement be presented to the court and the attorney at issue was not representing him in any capacity. *Id.* at 22. However, the *Tibbs* court made the following statement as a part of its decision: "Pursuant to [18 U.S.C. § 1623(c)], a sworn affidavit that is submitted to a federal court by an individual or his authorized agent may properly subject that individual to a perjury prosecution." *Tibbs,* 600 F.2d at 20–21 (citing *United States v. Stassi,* 443 F.Supp. 661 (D.N.J.1977), aff'd., 583 F.2d 122 (3rd Cir. 1978)); *see also United States v. Wilkinson,* 137 F.3d 214, 225 (4th Cir.1998) (holding that a false statement made during a deposition in a civil case is an ancillary proceeding before a court sufficient to invoke section 1623) (citing *United States v. McAfee,* 8 F.3d 1010, 1013–14 (5th Cir. 1993)).

■■■ In this case, the bankruptcy petition was an official filing submitted by Moriel to a bankruptcy court. By submit-

ting the petition to the Court, Moriel was seeking a remedy which that court could provide directly to her. This is not a situation where Moriel could have reasonably believed her bankruptcy filing constituted a statement beyond the reach of a perjury prosecution, and this Court does not believe that the filing would have been any more solemn had an oath been administered prior to its making. It was a sufficiently formal statement that was made to a court by Moriel herself with the assistance of her own attorney—and this Court finds that, at a minimum, this filing was equivalent to a statement made in a deposition. *See Dunn,* 442 U.S. at 109, 99 S.Ct. 2190, and *Wilkinson,* 137 F.3d at 225. Additionally, this Court agrees with the *Tibbs* court's finding that a statement other than one made under oath, such as a sworn affidavit, can constitute one of the statements involved in a section 1623(c) prosecution. Defendant's motion to dismiss will be denied.

## III. MOTION TO SUPPRESS

■ Two exhibits were presented to the Court at the hearing. Government's exhibit 1 is a "Bankruptcy Questionnaire" which was filled out by defendant and given to her bankruptcy attorney in January 1999. In that same month, her attorney prepared what is now government's exhibit 2, the bankruptcy petition at issue in this case. The second document is a public filing; but at the hearing, defendant's bankruptcy lawyer testified that exhibit 1 was maintained in his file, and that the information he garnered from it was used in preparing exhibit 2 for the bankruptcy court. By motion of March 19, 2002, defendant seeks to exclude the presentation of exhibit 1 at trial as it is protected under the attorney-client privilege. The government resisted this motion on March 25, 2002.

When Moriel entered the relationship with her bankruptcy attorney, the attorney-client privilege existed. But then, she voluntarily filed exhibit 2 with the bankruptcy court. Exhibit 1 was a document prepared by Moriel, and used by her attorney to prepare exhibit 2. This petition was a disclosure of a significant part of the communication between Moriel and her bankruptcy lawyer, and she thereby waived the attorney-client privilege with respect to the underlying document used in preparing the petition. *See United States v. Cote,* 456 F.2d 142, 144–45 (8th Cir.1972) (citations omitted) (detailing how documents prepared by taxpayers and used by tax attorney to prepare and file amended tax returns were not protected by attorney-client privilege because it had been waived); *In re Fisher,* 51 F.2d 424, 425 (S.D.N.Y.1931) (indicating that attorney-client privilege cannot be claimed in a bankruptcy case when the communication at issue was "made with the understanding that it was to be imparted to third parties") (citation omitted).

In her motion, defendant seeks to exclude all statements, documents, information and things prepared by defendant or discussed with her attorney. At this time, the Court is only aware of government's exhibit 1, although it is clear that defendant's bankruptcy attorney turned his entire client file over to the government pursuant to the grand jury investigation. Defendant's motion with respect to government's exhibit 1 will be denied. Any remaining dispute whether particular workpapers from the bankruptcy attorney's file contain matters that did not appear in the bankruptcy petition should be submitted to this Court for an in camera ruling. *See Cote,* 456 F.2d at 145 n. 4 (citing *Brown v. United States,* 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500 (1928)). Further, the Court notes that if the government intends to call defendant's bank-

ruptcy attorney to the stand at the trial, it will also perform an in camera review of his testimony before allowing the government to present such testimony to the jury.

## IV. MOTION TO CONTINUE

■ On March 29, 2002, defendant requested a thirty day continuance of the trial in this matter. The government resisted this motion on April 2, 2002. The Court's calendar is much more amenable to holding trial in this case in May at its currently scheduled time. Additionally, the Court notes that this case has been on file since June 14, 2001. While a superseding indictment was filed last month, the nature of the charges against Moriel and the related discovery materials do not appear to have been significantly altered, if at all, by the superseding indictment. Thus, defendant's motion to continue the trial is denied.

## V. CONCLUSION

For the above stated reasons, defendant's motions to dismiss Count III of the superseding indictment and to suppress government's exhibit 1 are denied. Further, her motion to continue is denied.

IT IS SO ORDERED.